David H. Krieger, Esq.
Nevada Bar No. 9086
KRIEGER LAW GROUP LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com

Miles N. Clark, Esq.
Nevada Bar No. 13848
Shaina R. Plaksin, Esq.
Nevada Bar No. 13935
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: miles.clark@knepperclark.com
Email: shaina.plaksin@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SIDOINE BRUCE,<br><br>        Plaintiff,<br>v.<br><br>HOME POINT FINANCIAL<br>CORPORATION,<br><br>        Defendant. | Civil Action No.: 1:21-cv-00100<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction because this case arises out of violations of

federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2.     This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.     Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Marion County, the State of Indiana and because Defendant is subject to personal jurisdiction in Marion County, State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2). Further, Home Point Financial Corporation has a registered agent of service in Indiana and is listed with the Indiana Secretary of State as a foreign for-profit corporation doing business in Indiana.

## PARTIES

4.     Plaintiff Sidoine Bruce ("Plaintiff") is a natural person residing in Marion County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.     Defendant Home Point Financial Corporation ("Home Point Financial") is headquartered in Ann Arbor, MI, doing business in the State of Indiana.  Home Point Financial is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

6.     Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

///

///

**FACTUAL ALLEGATIONS – FCRA VIOLATIONS**

*GENERAL ALLEGATIONS*

7.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

8.  The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

9.  On April 11, 2018, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiff's case was assigned Case Number 18-02628-RLM (the "Chapter 7" or "Bankruptcy"). BK ECF No. 1.

10.     On June 11, 2018, Home Point Financial filed a Reaffirmation Agreement, whereby Plaintiff agreed to reaffirm the debt owed to Home Point Financial, on secured property of a primary residence mortgage on property located at 1352 New Field Lane, Indianapolis, IN 46231. BK ECF No. 14.   As part of this Reaffirmation Agreement, Plaintiff agreed to pay monthly installments beyond the end of her Chapter 7 Bankruptcy and acknowledged that the debt would not be discharged. *See id.* at 1.

11.     On July 24, 2018, Plaintiff obtained an Order of Discharge on her Chapter 7 Bankruptcy case. BK ECF No. 18.  Plaintiff's Order of Discharge expressly stated: "[D]ebts covered by a valid reaffirmation agreement are not discharged." *Id.* at 2.

12.     Furthering the FCRA's goal of accuracy, a consumer may dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a).  Once notified of a dispute, a consumer reporting agency must notify the source or furnisher of information, who must in turn conduct an investigation of the disputed item pursuant to Section[1] 1681s-2(b).

13.     Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(B).

14.     The furnisher must timely report the results of the investigation to the consumer reporting agency, which in turn must timely notify the disputing consumer regarding the results of the reinvestigation. *See* 15 U.S.C. §§ 1681s-2(b)(1)(C), 1681i(a)(6).

---

[1] Unless otherwise noted, herein, all references to "Section," are to the sections or subsections of United States Code Chapter 15.

15. If the furnisher's investigation yields results that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

16. Additionally, Defendant's conduct described herein also failed to comply with the Consumer Data Industry Association's ("CDIA's") Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

17. The CDIA publishes the Metro 2 reporting standards to assist furnishers (like Defendant) with their compliance requirements under the FCRA.

18. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. TransUnion, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

19. On information and belief, Defendant herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

20. The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer reaffirms in a chapter 7 bankruptcy. *See, e.g.*, 2017 CDIA Credit Reporting Resource Guide ("2017 Metro 2"), Frequently Asked Question

("FAQ") 27(a), at page 6-17.  The instruction provided is: "Account information as it applies going forward."  *Id*.

21.  Despite the Metro 2 Format's instructions, Defendant failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed a reaffirmation agreement in the Bankruptcy, as further set forth below.

22.  Thus, the incomplete and inaccurate reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

23.  This is true both under Metro 2, and if Metro 2 does not apply.  Metro 2 requires reporting accurate post-discharge payment history for a reaffirmed secured debt, such as a mortgage or automobile.  *See supra* ¶ 20 (citing Metro 2 FAQ 27(a)).

24.  The inaccurate reporting provided to Plaintiff as described herein was not only patently incorrect, but also materially misleading.  *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

## HOME POINT FINANCIAL FCRA VIOLATIONS

### *Home Point Financial Violates 15 U.S.C. § 1681s-2(b) (Count 1)*

25.  Plaintiff obtained her credit disclosures pursuant to Section 1681g from Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively, "Disclosures"), on or about January 14, 2020.  Both of these two Disclosures included a tradeline for Home Point Financial partial account no. 308000037**** ("Home Point Financial Account").

26.  For the Trans Union Disclosure, Home Point Financial inaccurately reported for Plaintiff's Home Point Financial Account: "Remarks: Chapter 7 Bankruptcy."  For the

Experian Disclosure, Home Point Financial inaccurately reported for Plaintiff's Home Point Financial Account a Status of "Discharged through Bankruptcy Chapter 7." However, both of these reportings were inaccurate because, as explained *supra* ¶¶ 10–11, Plaintiff's debt to Home Point Financial was reaffirmed during her chapter 7 bankruptcy and not discharged.

27. Pursuant to 15 U.S.C. § 1681i(a)(2), letters dated February 12, 2020, were sent from Plaintiff to Trans Union and Experian ("CRAs"), disputing the reporting of her Home Point Financial Account tradeline that appeared on both of her Disclosures.

28. Plaintiff sent her dispute to each CRA, in writing, outlining claimed incorrect and inaccurate credit information furnished by Home Point Financial.  Specifically, a letter was sent to each CRA from Plaintiff ("Dispute Letter(s)"), requesting that the inaccurate and incorrect derogatory information be corrected.

29. Upon information and belief, upon receiving the Dispute Letter, each CRA notified Home Point Financial of the dispute based on the CRAs' mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

30. Upon receipt of the notice from each CRA, Home Point Financial was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

31. Upon information and belief, Trans Union failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute. As such, on April 30, 2020, a second letter was sent to Trans Union from Plaintiff, disputing the same Home Point Financial Account ("Second Dispute Letter"). Upon information and belief, upon receiving the Second Dispute Letter, Trans Union again notified Home

Point Financial of the dispute based on the CRA's mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

32.    Upon receipt of the notice from Trans Union, Home Point Financial was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

33.    Upon information and belief, Trans Union again failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute. However, Plaintiff obtained a new Trans Union Disclosure dated May 7, 2019, which indicated that Trans Union nevertheless updated Plaintiff's Home Point Financial Account tradeline in accordance with Home Point Financial's investigation. However, Home Point Financial failed to correct the inaccuracy Plaintiff disputed, and the remark of ">Chapter 7 Bankruptcy<" remained.  Moreover, Home Point Financial also added further inaccuracies to its tradeline, including changing the Pay Status from "Current; Paid or Paying as Agreed" to ">Account Included in Bankruptcy<."

34.    In addition to maintaining and adding more bankruptcy indicators on the Home Point Financial tradeline, Home Point Financial's investigation also failed in another significant respect: it deleted her positive payment history.  Specifically, on Plaintiff's January 14, 2020 Trans Union Disclosure, despite the other inaccuracy on the Home Point Financial tradeline, it had beneficially included about five years' worth of positive payment history from July 2013 through June 2017, along with September and October 2017. This positive payment history should have remained on the Home Point Financial tradeline, along with Plaintiff's consistent payments under the Reaffirmation Agreement through present. By deleting Plaintiff's Home Point Financial Account payment history upon reinvestigation,

- 8 -

Trans Union suppressed the positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy. That is, the material omission of Plaintiff's positive payment history on her Home Point Financial Account was patently incorrect because she was in fact making timely monthly payments from July 2013 through present ("Positive Suppressed Data").

35. This failure caused Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Home Point Financial.

36. Upon information and belief, the payment history segment has a significant overall impact on the various consumer reporting products that Trans Union offers credit decision makers.

37. Deleting the Home Point Financial tradeline payment history section was patently incorrect because it did not reflect Plaintiff's actual payment performance from July 2013 through present.

38. This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Home Point Financial from July 2013 through present.

39. Similarly, on March 4, 2020, Plaintiff received a "reinvestigation" report from Experian ("Experian Reinvestigation"). Experian indicated that it had received the Experian Dispute Letter and investigated Plaintiff's dispute.

40. Experian declined to update Plaintiff's Home Point Financial Account based on Home Point Financial's investigation. Specifically, Experian's Reinvestigation stated: "The company that reported the information has certified to Experian that the information is

accurate. This item was not changed as a result of our processing your dispute." As such, Home Point Financial failed to correct the inaccuracy Plaintiff disputed.

41.   Additionally, Home Point Financial failed to update Plaintiff's payment history.   On Plaintiff's January 14, 2020 Experian Disclosure, Home Point Financial listed her payment history as "OK" from July 2013 through January 2018 (with a few exceptions of "ND" meaning "No data for this time period").   However, upon reinvestigation, her Home Point Financial payment history remained the same, missing over two years' worth of positive payment history from February 2018 through present. This positive payment history should have continued on the Home Point Financial tradeline, along with Plaintiff's consistent payments under the Reaffirmation Agreement through present.   By failing to continue to update and report these payments upon reinvestigation, Home Point Financial suppressed the positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.   That is, the material omission of Plaintiff's positive payment history on her Home Point Financial Account was patently incorrect because she was in fact making timely monthly payments from July 2013 through present.

42.   This failure by Home Point Financial caused Plaintiff's Experian Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Home Point Financial.

43.   Upon information and belief, the payment history segment has a significant overall impact on the various consumer reporting products that Experian offers credit decision makers.

44.   Failing to update the payment history the Home Point Financial Account was patently incorrect because it did not reflect Plaintiff's actual payment performance beyond January 2018.

45.   Home Point Financial's failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Home Point Financial from February 2018 through present.

46.   A reasonable investigation by Home Point Financial at any point following either Dispute Letter would have indicated that Plaintiff reaffirmed her Home Point Financial debt and continued to make all required payments as agreed.  A reasonable investigation also would have removed the bankruptcy indications from the tradeline.

47.   Home Point Financial failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b), failed to review all relevant information Plaintiff provided in her Dispute Letters, as required by and in violation of 15 U.S.C. § 1681s-2(b), and wrongly continued reporting inaccurate information in connection with Plaintiff's credit reports.

48.   Moreover, Plaintiff has suffered concrete and imminent harm to her creditworthiness.  The Trans Union Disclosure demonstrated that at least sixteen non-Trans Union entities procured Plaintiff's consumer reports during the two-year period preceding the Trans Union Disclosure.[2]  Similarly, the Experian Disclosure demonstrated that at least twenty-two non-Experian entities procured Plaintiff's consumer reports during the two-year period preceding the Experian Disclosure.[3]  Moreover, as of the date of both Disclosures, both Trans Union and Experian were reporting that Plaintiff had an open account with another third party, namely Fifth Third Bank NA.  Account-holders, such as this third party with an open account, routinely review a consumer's account by procuring consumer reports, which can be used to assess whether the consumer continues to meet the terms of

---

[2] This does not include a list of entities who appear to be affiliated with Trans Union, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

[3] This does not include a list of entities who appear to be affiliated with Experian, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

the account.  Finally, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

49.  Plaintiff's continued efforts to correct Home Point Financial's erroneous and negative reporting of the reaffirmed debt by communicating Plaintiff's dispute with Trans Union and Experian were fruitless.

50.  Home Point Financial's continued inaccurate and negative reporting of the reaffirmed debt in light of its knowledge of the actual error was willful.  Indeed, Home Point Financial clearly knew about the Reaffirmation Agreement, as it was party to the Reaffirmation Agreement and filed it in Plaintiff's bankruptcy.  Plaintiff is, accordingly, eligible for statutory damages.

51.  Also as a result of Home Point Financial's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Home Point Financial's inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress.

52.  By inaccurately reporting account information relating to the reaffirmed debt after notice and confirmation of its errors, Home Point Financial failed to take the appropriate measures as required under 15 U.S.C. § 1681s-2(b).

53. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and she is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant on Count 1:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///
///
///
///
///
///
///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 13, 2021

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
KRIEGER LAW GROUP LLC
2850 W. Horizon Ridge Parkway, Ste. 200
Henderson, Nevada 89052

Miles N. Clark, Esq.
Shaina R. Plaksin, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorneys for Plaintiff

- 14 -